Plaintiff Appellant v. Jennifer Skirko and Leslie A. Gentile, Defendant's Appellees. Oral argument not to exceed 15 minutes for Appellant and 15 minutes to be shared by the Appellees. Ms. Freyberg for the Appellant, you may proceed. Good morning. May it please the Court. I'm Antoinette Freyberg and I represent Appellant Lawrence Wohleber in this matter. Lawrence Wohleber is respectfully requesting this Court to reverse the trial court decision in this matter, The trial court erred as a matter of law in finding that there was no matter to be stayed. The trial court also erred as a matter of law that the Appellee's inaction was not a violation. This case is primarily about the automatic stay, which is the backbone of the bankruptcy code. In this situation, the parties had been involved in an extensive domestic relations dispute. The Domestic Relations Court had issued an order regarding a property division for Mr. Wohleber to pay to Ms. Skirko. In July of 2013, Ms. Skirko, through her attorney Ms. Gentile, filed a motion to show cause for failing to pay the property settlement. A hearing was held a few weeks later on July 22nd of 2013, wherein the domestic relations judge found Mr. Wohleber in contempt of court. At that time, the judge gave Mr. Wohleber a time to pay the property settlement in order to avoid contempt. He was given until October 1st of 2013. On October 4th of 2013, Mr. Wohleber filed for protection under Chapter 13 of the Bankruptcy Code. At that time, Mr. Wohleber notified Ms. Skirko and Ms. Gentile and also the court through a notice of filing, which was four days prior to the scheduled sentencing hearing. At no time was any action taken between October 4th and October 8th by the appellees Skirko and Gentile to stop the proceeding, wherein Mr. Wohleber was sentenced for contempt. On the day of the hearing on October 8th, the court allowed the parties some time to see if they could reach some kind of resolution. Pursuant to the court transcript, which is part of the record, the judge allowed 10 to 15 minutes for the attorneys to confer with their clients and with each other regarding a possible resolution. Finding that there was no resolution, the court went on the record to find that Mr. Wohleber would be sentenced to 30 days incarceration. However, he could avoid any incarceration if he paid the contempt amount, which was the property settlement. The court also found that at any point in time during those 30 days, should he pay the amount, he would be released immediately. The court asked the parties if they were ready to proceed. No one other than Mr. Wohleber and his attorney offered any action to stop the sentencing on that day. As a result, Mr. Wohleber was taken into custody on October 8th of 2013 and remanded to the county jail. Through negotiations, he was released on October 17th of 2013 by an agreement that was filed for record and reflected in the court docket. The condition was that he was released pending further adjudication in the bankruptcy court. Lawrence Wohleber filed this action to fine the defendants in violation of the automatic stay because there was a contempt proceeding which was essentially geared towards collecting the payment of the debt. Further, this case was filed because not only did they not take any action, the parties did nothing to stop the court from finding him in contempt. The main issue that was before the trial court that was argued by the appellees was whether or not this was a matter of civil contempt or criminal contempt. There's a lot of case law, specifically US v. Bayshore in the Sixth Circuit here, that defines civil versus criminal contempt. Essentially, in civil contempt, if the party can pay the purge amount and basically control whether or not he gets punished by incarceration, it's a civil matter. Essentially, then, the court is a vehicle to enforce collection of the debt. In a criminal contempt, essentially, the court is punishing the party for violating their order and upsetting the dignity of the court. In this situation, the contempt was merely just to effectuate payment of the debt. In the transcript that's included in the record, the domestic relations court judge had indicated that she would take any settlement that the parties would reach and that as long as he paid, he didn't have to go to jail. There is no indication that the court was upset with Mr. Willebar or anything that had transpired. The court just wanted some kind of resolution. Essentially, the appellees were using the court as a vehicle to enforce payment on that obligation. The trial court erred in finding that there was actually no matter to be stayed. The trial court found that the contempt matter had already been resolved, and the sentencing was just a follow-through of the prior contempt that was found in July of 2013. If that were the case, any time a creditor gets a judgment in a court or any type of post-judgment collection activity, for example, garnishing of wages or a foreclosure sale or a levy of property, repossession of property, at any time that the creditor has last acted and then the court's just following through with whatever was requested, that would be okay based upon the fact that the court indicated that this was just a follow-through of the court order. A contempt matter in domestic relations court is the vehicle for the collection of the debt. There wasn't a penalty for Mr. Willebar to pay to the court for disrespect, for not appearing, any of those situations. Ms. Freberg, is there any dispute of facts as far as you know in this case? I mean, are the parties contending their disputed facts in this matter? No, Your Honor. I believe the dispute is just the characterization of those facts. We stipulated to the record and to some facts at the trial of this matter. No one's disputing the chronology of the case. Okay, thank you. Several courts have found even that in a situation where a creditor has attempted to get an aid in execution, for example, a show cause for not appearing for a debtor's exam or for providing certain discovery, even when the court orders a bench warrant on a show cause, there are several courts that have found that even in that situation, even though it's based upon not complying with the court order, that it's still basically a civil matter and that it's really still just a collection of debt. Cases that were cited include Enrique Almar where a creditor had basically made it known to U.S. Marshals at a 341 to go ahead and arrest the debtor in order to basically collect on that judgment. Enrique Daniels is an Idaho case. A creditor did have the authority to quash a bench warrant. Essentially, the appellees here say that they had no power to do anything to stop the motion to show cause, even though it was for the collection of their benefit. But other cases have decided that, yes, since they put that into motion, that it was their duty to stop that. So what should they have done? I mean, the judge brings everybody together and says, listen, whatever you agree to, I'm going to accept. And you make a strong argument, well, and the appellees do, that they didn't ask for money to be paid because that would have been a violation of the automatic stay, correct? Had they asked for the money to be paid? Yes. I mean, the trial court had indicated had the creditor, had the appellees actually asked for money, that that would have been an affirmative step toward collecting of the debt. However, under the bankruptcy code, the creditors have an affirmative duty to stop what they've put into action. For example, Judge Speer in the Enrique Hardesty case had determined that there's an affirmative duty, even to stop third parties from doing something to damage a debtor when the stay is in effect. Especially if it changes the status quo. Correct. Correct. And essentially, there was even a case cited, Your Honor, regarding Enrique Goodson, that a court spontaneously decided that they were going to convert a civil matter into a criminal contempt matter. And the court held that even though it was of the judge's own volition, that the creditors were still complicit. They still participated in the hearing. And if we look at the trial court's decision in this matter, where the court found that the creditors had no affirmative duty to act, they could basically file aides in execution and just let things slide. They would never have to take action. And that really would completely erode the purpose of the bankruptcy stay. For those reasons, we ask the court to reverse the trial court's decision, finding that there was no stay violation and that there was no affirmative duty to collect or to take action to stop the contempt. Thank you. Thank you, Ms. Friedberg. Thank you. Good morning. May it please the court, my name is Brian Sullivan, and I have the pleasure of representing one of the defendant appellees, Leslie Gentile, in this matter. Ms. Gentile was the attorney for Jennifer Skirko, one of the parties in the domestic relations proceeding with her ex-husband, Lawrence Wobler. Before I get started, I just wanted to, Judge Humphrey, I guess thank you for your service, congratulate you for the conclusion of your service. Hopefully your colleagues will let you go off into retirement and enjoy your hobbies. Well, he's retiring from the BAP. He's not retiring. Well, I take that back then. Sorry about that if I misled anybody. I would urge the court to affirm the bankruptcy judge's dismissal of this action for two reasons. First, the bankruptcy court properly found that the debtor's contempt sentence was not a violation of Section 362, the automatic stay provision. And second, the bankruptcy court properly found that neither Ms. Gentile nor her client had an affirmative duty or ability to prevent the domestic relations court from imposing a sentence. Here, counsel for the debtor indicated that what the defendants were engaged in through the contempt mechanism was the collection of a debt. I would submit that this argument was rejected by the bankruptcy court judge, who made a specific finding that has not been attacked as clearly erroneous, that the matter before the domestic relations court was the court's enforcement of its prior determination that Mr. Wohlberg had been held in contempt of court for his repeated failure to pay a property settlement award. So are you saying, Mr. Sullivan, that the domestic relations judge's order was to uphold the dignity of her court? I am, Your Honor. And what evidence in the record do you have that that order was to uphold the dignity of the court as opposed to collect the property division? The evidence that we have is the chronology of events, as well as the transcript hearing from the domestic relations sentencing hearing. What in the transcript? I know the chronology. Is the chronology simply, okay, she ordered it to be paid, then he didn't pay it, therefore she sentenced him? It is in part. I think the important aspect from the chronology is the fact that the instrument that began this process was the motion for show cause that had been filed on behalf of Ms. Skirko because Mr. Wohlberg had not paid the property division. That issue was adjudicated in July of 2013, where the domestic relations court found Mr. Wohlberg in contempt of court for his past violations of paying a property settlement award. At that hearing, he was specifically found to be in contempt and given a period of time to purge that contempt. He was given until October 1st of 2013 to purge that contempt. He failed to do so, and it wasn't until four days after the time had expired within which he was permitted to purge his contempt that he filed for bankruptcy protection. Prior to him filing for bankruptcy, when the court found him in contempt and told him that he had until October 1st, the court indicated that if you don't purge this contempt by October 1st, we will convene a sentencing hearing on October 8th under those circumstances. From that chronology, it's clear, I believe, that the show cause motion that was filed by my client on behalf of Ms. Skirko was concluded at the end of the July 27th hearing where it was granted and Mr. Wohlberg was found in contempt. In addition to that, the record demonstrates the discussions that the Domestic Relations Court engaged in before sentencing Mr. Wohlberg. She was made aware of the bankruptcy stay. She had indicated on the record that she had done her own independent research as to whether or not the bankruptcy stay precluded her from proceeding with the sentencing for Mr. Wohlberg's violation of contempt, and concluded that based upon that research that she was within her authority to enforce her order and punish Mr. Wohlberg for his violations of that order. But is there anything in the record where she states the basis for her conclusion that the stay did not apply? Other than the fact that she indicated she did her own independent research and made that conclusion. She stated no case, she stated no legal basis other than she did this research and concluded on her own that it didn't apply. She did. She also offered Mr. Wohlberg and the attorneys present the opportunity to present additional information, argument, authority to her that would cause her to reconsider her inclination. And that leads me to my next question. What did your client do to try to stop the court, the Domestic Relations Court, from proceeding? My client made sure that the judge was aware of the fact that the bankruptcy petition had been filed and that there was an automatic stay pursuant to Section 362. My client did not advocate that the court proceed with the sentencing hearing, nor did she affirmatively request that the court not proceed. Why didn't your client file a motion for relief from stay in the bankruptcy court? Well, I think my client, I believe, was operating under the assumption that she wasn't a necessary party to these proceedings. This was an effort by the Domestic Relations Court to enforce its prior court order. Certainly my client attended the sentencing hearing. Why did she do that? Well, presumably to make sure that the court was aware of the fact that there was the bankruptcy stay and to address any questions that the court may have. But she did not actively participate in the hearing and take a position that the Domestic Relations Court should proceed with the hearing. Well, I appreciate and really understand the position of your client. You violate the stay if you go to this hearing and say, by the way, I want this money paid within the next number of days and I'll take it to installments, $100 bills, or whatever you want to say. Because I think that clearly sets it up the other way. But isn't there some sort of obligation to say to the domestic court judge, listen, why don't we just hold here for a bit? We'll go to the bankruptcy court, get some approval if we need to, then we can come back. I mean, the timing isn't all that critical. It's been a long time since this hasn't been paid anyway. That's what I don't understand. I think it's somewhat of a fallacy in the opponent's argument to suggest that my client had the ability to dictate to the Domestic Relations Court how to run her docket. In fact, the parties, Mr. Wallaber's counsel did ask for the Domestic Relations Court to continue the sentencing hearing so that these issues could be brought to the bankruptcy court. And the Domestic Relations Court refused to do so, believed that she was within her right to proceed with the enforcement of her prior contempt order, and did so. And so the notion that my client, the attorney for Ms. Skirko, has the ability to direct the Domestic Relations Court in terms of what action to take, I think is a little bit of a fallacy. You don't think she could have said, Judge, stop, let's stop, let us go to the bankruptcy court, obtain an order from the bankruptcy court, and we'll be back? So, you know, I believe my client discharged her obligations under the bankruptcy code by making sure that the Domestic Relations Court was aware of the fact that a bankruptcy had been filed and that there was an automatic stay. Wasn't the judge already noticed because a notice or suggestion of the bankruptcy statement filed with the Domestic Relations Court? It was. So in other words, you're saying as your client didn't do anything, anything really, that wasn't already done to try to stop the Domestic Relations Court from proceeding? Well, it became apparent from the judge's comments that she was intent on proceeding because after she had conducted her research, she believed she had the ability to enforce her prior contempt order. How about the show cause order in the, did your client move that there be a show cause order in the state court because she hadn't been paid? She did. Back in November of 2012, she filed a motion to show cause why Mr. Wohlberg shouldn't be held in contempt for failure to pay. Well, then at minimum, couldn't she have moved to withdraw that given the bankruptcy? So that order was adjudicated on July 22nd of 2013 when the court held a hearing on that motion and found Mr. Wohlberg in contempt. The bankruptcy court below made a specific factual finding in page 42 of the trial transcript that the matter before the court at the sentencing hearing was the court's intent to withdraw the bankruptcy order. It attempts to enforce the show cause, I'm sorry, the court's attempt to enforce the contempt finding. It was not the motion to show cause that had been filed back in 2012. That issue had been fully adjudicated by July of 2013, several months prior to the sentencing hearing. It just seems to me that your client could have in some way indicated to the state court judge that whether it's withdraw, reconsider, stop the bankruptcy order, stop this proceeding, that would have clued the state court judge into the fact that she needed to wait at least? Well, and again, the bankruptcy court judge found that our clients took no actions to attempt to compromise the stay by seeking to negotiate or to discuss the payment of terms or the collection of the debt. And so we believe that our client has discharged its obligation to the domestic relations court of the bankruptcy section. I see I'm into my co-counsel's time and if there are no further questions for me. I do have a further question. Ms. Freeburg stated that she did not believe there was any dispute of fact on this matter. What is your position? Is there any dispute of fact on this matter, or is it just construing the undisputed facts? I don't know that there are any disputed issues of fact. The bankruptcy court did make a number of factual findings in its conclusion of the matter. I don't believe those factual findings have been contested on appeal and or argued that they were clearly erroneous, which I believe is the appropriate standard. So I don't, as I stand here, I don't recall any issues of fact that are in dispute, Judge. I have just one more follow-up question. I'm sorry, I'm sure we'll get this adjusted. It's his job, not mine, to do that. But you never had the opportunity to present any proofs whatsoever at the bankruptcy court level. If this court reverses and sends it back to the bankruptcy court, would you want to go forward with your proofs on liability? Are you satisfied that what was done was done and you just leave it like that? Because procedurally, you never had a chance to put on any witness, if I remember correctly. We moved for dismissal at the conclusion of Mr. Walloper's case in chief, and that was granted. So we did not put on any evidence, that's correct. As the court may recall, the domestic relations judge was a defendant in this case. They obtained summary judgment on an immunity basis. So there is at least the potential that there may be an effort to call the domestic relations court judge as a witness. Whether or not we would be successful in compelling her testimony, I guess, remains to be seen. But certainly on the day of the hearing, she was not there to testify as a witness, so we weren't anticipating it at that time. There was a whole discussion about who needs to be separated and things like that. I remember seeing that in the transcript. Thank you. If there are no further questions, I would like to refer the balance of my time to my co-counsel. Thank you, Your Honors. My name is Kenneth Frankel. I represent Appalachian for SCRCO. By the way, Mr. Frankel, if we aid into your time, you can have that additional time. One thing I would like to address is the issue about whether or not Jennifer Skirko and also Leslie Gentile had any opportunity to stop Judge Boros from the sentencing. First of all, the contempt motion had already been ruled on. There was no motion to withdraw. The only thing that was remaining was a court order. Litigants cannot withdraw a court order. Only the court can vacate a court order. And Judge Boros clearly indicated that she was going to proceed with this case. To be a little colloquial, the attorneys could have stood on their head and it wouldn't have stopped Judge Boros from proceeding. They could have moved to vacate that order, couldn't they? Certainly, a motion could have been filed. However, Judge Boros had indicated that she was going to proceed. In fact, on page four of the transcript, after Wallenberg's attorney asked that the matter be continued for 30 days, she indicated that after discussion in chambers that wasn't going to happen. She was not going to consider any continuances. The judge had made up her mind. And again, as a practical matter, there was nothing Jennifer Skirko or Leslie Gentile could do to stop Judge Boros from proceeding. Didn't they have an obligation to try? I don't think so, Your Honor, because there was an attempt to try to the extent that the judge was made aware that there was a bankruptcy filed and what the provisions of the stay were. Judge Boros said she researched the issue in the Ninth Circuit of the Ohio Appellate Courts and determined that there was nothing to prevent her from proceeding. So to the extent that there was an attempt to try, that attempt had already occurred by the fact that, Judge, there's a bankruptcy filed and the judge said, I don't care, I'm proceeding. In fact, if there was any violation of the stay, it would have been violated by Judge Boros, not Jennifer Skirko. Or Leslie Gentile. Because the judge clearly was going forward with it no matter what anybody said. And that's in the record of the transcript of the proceedings on the sentencing. But again, there's no evidence. I've still heard no evidence that your client either then tried to do anything to prevent the domestic relations judge from proceeding. We understand there was a notice suggestion of stay filed, which I think was filed by Mr. Wolber. Was there any attempt by your client to stop the domestic relations court from proceeding on that sentencing hearing? Not other than what I just said. However, I don't think a litigant is required to do a futile act. And it clearly would have been a futile act to keep arguing with the judge about this. Because the judge clearly indicated she was proceeding. But doesn't an attorney have that obligation, too, if they believe the judge is not proceeding? And don't they do it every day? If they disagree with the judge and say, judge, we disagree. We need to think we need to go to bankruptcy court and get an order from the bankruptcy court. But the judge had already indicated she wasn't going to grant any continuances. But there was no attempt. Well, there was an attempt. Well, Wolber's attorney asked for a continuance and the judge said, I'm not granting any continuances. So for somebody else to ask for a continuance, I think, would have been a futile act. Once the judge says, I'm not granting any continuances, to again pound the judge and say, I want a continuance, it would have been a futile act. Dr. Franco, it seems like a lot of this comes out of the reference to the, there was clearly an in-chambers meeting before the judge took the bench. And we don't have that on the record and I understand why not. But again, I'm sympathetic to your client's plight in that if you ask for money, you violate the automatic stay. And your client did not do that. And what you're telling us is the pitch, if you want to call it that, or the argument or the position that, hey, let's not go forward here today because it's violating the automatic stay. We'd be better off and feel better going to the bankruptcy court to get the stay. That was all said apparently in chambers and the domestic court judge said, I don't care about that. I've done my own research and we need to go forward. Is that pretty much what I'm hearing you say? To be honest with the court, I wasn't in chambers so I can't repeat what was said in the chambers. But it seems like that's what you have to suppose. Yes, that was I'm sure discussed because otherwise the judge wouldn't have said, I've researched this issue and I don't believe the stay applies. And in fact, there is case law that supports that the stay doesn't apply. The Rook case and the Rogers case cited in my brief. Which are not Sixth Circuit authorities.  Right, but we would suggest they might be persuasive on the court. Also, the analogy that Waliber gives of a creditor-debtor relationship does not apply in this case. This is a contemnor-court relationship issue. This has nothing to do with the floodgates will be open for post-judgment collection proceedings. Isn't this a civil contempt proceeding? It's not a criminal contempt proceeding. Well, the proceeding where Waliber was sentenced was a sentencing proceeding. It was not a contempt proceeding. The contempt had already been decided. And that's an issue that I think the appellant is getting muddled here. It was to enforce a civil contempt proceeding. It was to enforce the court's order finding Waliber was in contempt. Okay, so if you don't pay your visa bill, the court enters judgment against you. Then the court orders you to pay that. And you don't pay that. And the court sentences you to jail because you didn't pay under the court's order for you to pay that visa bill. That's not a violation of the stay. If a bankruptcy is filed and he intervenes. Well, with respect to the analogy the court suggests, a judgment is not an order to pay. So I don't think you would ever have a situation. No, I'm saying after the judgment, let's say the judge does order you to pay. There's an execution. Whatever you want to cost. Well, that would be a civil execution on a judgment. Why is this different than a civil execution on a judgment? Because this is a sentencing on a contempt. And the relationship now is between the court and the contemnor as set forth in the Rogers case. Once the court determined that Wallaber was in contempt, that ended Skirko's and Gentile's participation in the proceeding. Now it's between the court and the contemnor. It's not between a creditor and a debtor. But it doesn't, and it does. I mean, you've articulated a great argument on behalf of your client. But then we have the fallback of clearly Judge Burroughs was saying, listen, whatever the parties agree to, I'm going to accept. And again, your client can't say we want this because it's a violation of stay. But it's a fine line that I think gets crossed when Judge Burroughs says, well, whatever they agree to is fine with me. I mean, it sounds like she would have accepted that Mr. Wallabers pays $100 a week for the next however number of weeks. That's what I struggle with. That might have been crossing the line to a stay violation. Right. Absolutely. But again, the relationship at the sentencing is between the court and the contemnor. There was really nothing that required Skirko and Gentile to be there, and their participation was very, very, very limited. All the court said was, has the contempt been purged? And the answer was no. There wasn't any other discussion. So this concept of civil and criminal contempt, it's not clear cut that the purge entry makes it a civil contempt. In fact, the Burgess case cited in my brief says that the court can look more broadly at the facts. Let me ask you these two questions that we asked Mr. Sullivan. One, is there any dispute of facts in this case? No, Your Honor. Okay. And the question that my colleague, Judge Opperman, asked, and that's the bankruptcy judge decided this after Mr. Wallabers' case in chief. Was there any evidence, if it preceded, was there any evidence that your client would have presented an issue of liability? Yes, Your Honor. There would have been a defense case, had it been necessary. But going back to the concept of the court making factual findings, the bankruptcy court made factual findings that there was no attempt to collect the debt, and there was no stay violation resulting therefrom. And under Federal Rule 52, findings of fact can't be set aside, or should not be set aside, unless they're clearly erroneous. Isn't that really a question of law, though? Well, I don't think, I think the law is, and I think it's the Anderson case cited in my brief, that this court, or any appellate court, should not reverse the factual findings unless, because they would have decided that there was no attempt to collect the debt. They would have decided the case differently based upon those facts. So, yes, it's always a question of you apply the law to the facts, and Judge Price-Smith applied the law as she saw it to the facts as she found it. And, again, she made a factual determination there was no stay violation or attempt to violate the stay. But, yeah, isn't that a legal issue, whether there was a stay violation? Isn't that a legal issue, not a factual issue? Well, it's a legal issue based on the facts, but, again, this court would have to determine that the factual findings were clearly erroneous. Again, to decide the case because this panel would have decided the case differently, I think, is not in accordance with the law. Unless there's an error of law. Correct. I understand that. I believe my time is up, so unless the court has no further questions. Thank you very much. Thank you, Mr. Franklin. Thank you, Your Honors. Your Honors, the appellees had indicated in their statement that there was no action taken by the appellees to do anything to stop the process. The entire reason for the contempt in the first place was a collection of the debt. As you've noted, the domestic relations court judge even indicated on the record that she would be happy to take whatever agreement they came up with and that she would do that. That is a clear indication that she was not trying to uphold the dignity of court. She was not upset with Mr. Willebur. She wasn't trying to punish him for what he was doing in her court. You can probably see from the transcript that this was a long and drawn-out process in general. I don't think that the judge was in any way, shape, or form trying to punish him for one non-payment of this debt. The appellees are trying to shift the burden on the debtor to prove the automatic stay. The automatic stay is automatic. When a party who is going to benefit from a collection proceeding fails to take action, that is a violation. The Northern District of Ohio has already found, again, in In re Hardesty, in re Denbeck, that the failure to act is an act. When the party can stop something from happening, but they choose not to, that is an act. That is a violation of the automatic stay. There is no dispute here that the appellees were part of the hearing. They showed up. They took four days before the hearing without doing anything to stop the sentencing. Again, addressing the issue about whether or not this was a civil contempt or a criminal contempt that is accepted by Section 362, the Sixth Circuit has already determined through Bayshore that civil contempt can be determined whether the contempt is meant to benefit the complainant. If the result of the contempt is to coerce someone to do something or to pay something, that is civil contempt. That is the type of contempt that is stayed by the automatic stay. The appellees cannot sit by and watch the court do this without taking any action to try to stop what they themselves have put into place. At any point in time, they would have been able to, again, ask the court to hold off on the sentencing. They could have withdrawn their motion to show cause. Any time there is a judgment, a creditor can ask a court to vacate a foreclosure sale. They can ask a court to vacate a judgment. The Hardesty case had found a violation of stay where the parties weren't even doing anything. They filed a notice with the stay. They weren't taking any affirmative action. But the court found, Judge Speier found, that they needed to actually make sure that another party did not take action against the debtor. So certainly, they could have taken action with the Domestic Relations Court in order to stop what was going on. The appellees were definitely necessary parties to the action. If not for them, there would have been no motion to show cause, no contempt, and no sentencing hearing. For these reasons, Lawrence Wilbur is asking this court to find that the trial court erred as a matter of law when the determination was made that there was no stay violation. And that the appellees had no affirmative duty to take action to make sure that the stay was not violated. Thank you.